1   Robert P. Doty (SBN 148069)
    *rdoty@coxcastle.com*
2   Ali P. Hamidi (SBN 191198)
    *ahamidi@coxcastle.com*
3   James M. Purvis (State Bar No. 281596)
    *jpurvis@coxcastle.com*
4   COX, CASTLE & NICHOLSON LLP
    50 California Street, Suite 3200
5   San Francisco, CA  94111
    Telephone:  (415) 262-5100
6   Facsimile:  (415) 262-5199

7   Attorneys for Plaintiffs
    The Successor Agency to the former Emeryville
8   Redevelopment Agency and The City of Emeryville

9

10              **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| THE SUCCESSOR AGENCY TO THE FORMER EMERYVILLE REDEVELOPMENT AGENCY AND THE CITY OF EMERYVILLE, | Case No. 17-cv-00308-WHO |
| Plaintiffs, | **JOINT CASE MANAGEMENT STATEMENT** |
| vs. | |
| SWAGELOK COMPANY, an Ohio corporation; WHITNEY RESEARCH TOOL CO., a dissolved California corporation; HANSON BUILDING MATERIALS LIMITED, a British Corporation; CATHERINE LENNON LOZICK, an individual residing in Ohio, | Judge:           Hon. William H. Orrick<br>Action Filed:   January 20, 2017<br><br>CMC Date:    August 6, 2019<br>Time:           2:00 p.m. |
| Defendants. | |
| AND RELATED COUNTERCLAIMS AND CROSSCLAIMS | |

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP   070431\10643600
SAN FRANCISCO

Case No. 17-cv-00308-WHO
JOINT CASE MANAGEMENT STATEMENT

1   Plaintiffs The Successor Agency to the Former Emeryville Redevelopment Agency

2   ("Successor Agency") and The City of Emeryville ("City") (collectively, "Plaintiffs"), and Defendants

3   Swagelok Company ("Swagelok"), Catherine Lennon Lozick ("Lozick"), Whitney Research Tool Co.

4   ("Whitney"), and Specially Appearing Hanson Building Materials Limited ("HBML") [1] (collectively,

5   the "Parties"), by and through their respective counsel of record, hereby submit this Joint Case

6   Management Statement pursuant to Local Rule 16-9(c), in advance of the Case Management

7   Conference scheduled to take place on August 6, 2019, at 2 p.m.

8   **1.    Subject Matter Jurisdiction & Service**

9   The Court has subject matter jurisdiction over this action pursuant to sections 107 and

10  113(b) of the Comprehensive Environmental Response, Compensation, and Liability Act

11  ("CERCLA"), 42 U.S.C. § 9613(b); 42 U.S.C. § 6972(a) (a portion of the Solid Waste Disposal Act

12  commonly referred to as the Resource Conservation and Recovery Act ("RCRA")); and 28 U.S.C. §

13  1331 (federal question jurisdiction).  This Court has subject matter jurisdiction over the related state

14  law claims pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction).

15  All defendants have been served.  Swagelok, Lozick, and Whitney answered the Second

16  Amended Complaint and filed counterclaims and crossclaims in October 2017.  HBML answered the

17  Second Amended Complaint and filed counterclaims and crossclaims in February 2019 after its motion to

18  dismiss the Second Amended Complaint for lack of personal jurisdiction was denied.  (ECF No. 143.)

19  Plaintiffs answered HBML's counterclaims and Swagelok, Lozick and Whitney answered HBML's

20  crossclaims in March 2019.

21  **2.    Facts**

22  A.    Plaintiffs' Statement of Facts

23  This action arises out of polluted groundwater and real property owned by Plaintiffs and located

24  at 5679 Horton Street in the City of Emeryville, Alameda County, California (the "Property").  The

25  Property is approximately 1.75 acres in size and is generally bounded by Union Pacific railroad tracks to

26  the west, commercial/industrial properties to the north, Horton Street to the east, and Stanford Avenue

27

28

---

[1] HBML timely asserted, and continues to assert, that this Court does not have personal jurisdiction over it.

1   and a former rail spur to the southeast/south.  The Successor Agency's predecessor in interest—the

2   former Emeryville Redevelopment Agency—acquired all but a small fraction of the Property in 1999.

3   Through the exercise of eminent domain, the City later acquired a fractional interest in one parcel within

4   the Property.  The Property has only been used for storage since 2012, when the City's Public Works

5   Department vacated the site due to concerns regarding vapor intrusion from contamination in the

6   subsurface.

7       According to sampling, the impacted groundwater is allegedly located beneath and down

8   gradient (i.e., to the west) of the Property.  Plaintiffs allege the contamination was caused by industrial

9   activities that were conducted on the Property.  Plaintiffs allege that Swagelok, Lozick, Whitney, and

10  HBML are legally responsible for the contamination under federal statutes, California statutes that were

11  derived from and largely mirror those federal statutes, and California common law.  Defendants dispute

12  these allegations and in turn have filed counterclaims against Plaintiffs and crossclaims.

13      B.      Defendants Swagelok's and Whitney's Statement of Facts

14      Whitney is a California corporation that was dissolved in 2000 and has appeared in this action

15  only to the extent of its liability insurance.   From about 1963 to 1999, Whitney leased the Property

16  (where it engaged in manufacturing activities).  The Catherine Lennon Lozick Trust No. 3 ("CLL3"), the

17  titled owner of the Property in 1999, sold the Property to the Emeryville Redevelopment Agency

18  (predecessor to the Successor Agency). Mrs. Lozick was, at the time of the sale of the Property, the sole

19  beneficiary of CLL3.  In 1999, Whitney also sold substantially all of its assets to Swagelok.  Swagelok

20  has been sued as Whitney's alleged "alter ego" (which allegations they deny).  CLL3 was dissolved after

21  the sale.

22      Whitney and Swagelok deny that any of the contamination detected at the Property is

23  associated with Whitney's activities, and instead is associated with the activities of others, primarily

24  Marchant Calculating Machine Company ("Marchant") (to which HBML is alleged to be the

25  successor) and other off-site parties.  Marchant manufactured mechanical calculating machines at the

26  Property (and an adjoining property) for nearly sixty years, after which the buildings occupied by

27  Marchant were demolished.  In the early 1960's, a new foundation and building were built over a

28  portion of the pre-existing foundation and the site that had been occupied by Marchant and SCM.

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP   070431\10643600
SAN FRANCISCO

- 2 -

Case No. 17-cv-00308-WHO
JOINT CASE MANAGEMENT STATEMENT

1    That new building was occupied by Whitney until approximately May 1999 (and the "new" building is

2    still located on the Property today).

3         Whitney and Swagelok are also informed and believe that the City is alleging that

4    contamination from the Property has migrated offsite to City owned adjacent property known as the

5    South Bay Front Site B located at 1525-1535 Powell Street and 5760 – 5770 Shellmound Street,

6    Emeryville, CA ("Site B").  Site B was occupied by several industrial users, including but not limited

7    to Sherwin Williams Company.  Furthermore, according to the Department of Toxic Substances

8    Control, Site B has a history of mixed industrial use, including use as and by the Western Carbonic

9    Acid Company, Union Oil Company of California, a radiator hose facility, industrial equipment

10   storage, a rail spur, machine shops, a dental material warehouse, a lumber yard, an electronic

11   equipment warehouse and a plaster mix factory.  Any contamination on Site B is attributable to those

12   historic activities.

13        Whitney and Swagelok contend that the contamination on the Property and any offsite

14   contamination, including contamination at Site B was caused by others, including Marchant through

15   its hardening and plating operations, and other activities, and the actions of Plaintiffs' consultant in

16   installing groundwater wells, which exacerbated the extent of the contamination by allowing the

17   downward migration of chemicals present in the subsurface.

18        C.    Defendant Lozick's Statement of Facts

19        Mrs. Lozick was the beneficiary of the CLL3 that was the titled owner of the Property from

20   December 1988 until the sale of the Property to the Emeryville Redevelopment Agency in 1999. Mrs.

21   Lozick did not conduct any separate business operations on the Property at any time.  Mrs. Lozick

22   otherwise incorporates the Statement of Facts as set forth by Swagelok and Whitney.

23        D.    Defendant HBML's Statement of Facts

24        Specially Appearing HBML is a British corporation and appears in this action subject to a

25   continued objection to this Court's personal jurisdiction over HBML.

26        HBML denies that Marchant is responsible for any release of hazardous substances during the

27   time Marchant owned and/or occupied the Property.  HBML had no relationship, either directly or

28   indirectly, with Marchant during the years that Marchant owned and/or operated on the Property,

1   allegedly between 1910 and 1959.  Indeed, no entity affiliated with HBML was affiliated with any

2   entity allegedly holding Marchant's legacy environmental liability until 1986 (twenty seven years after

3   Marchant allegedly contaminated the Property).  HBML denies that it is a successor of Marchant or

4   that HBML could be the alter ego of any subsidiary that is alleged to be the successor to Marchant

5   under the highly rigorous alter ego standard recognized by the Ninth Circuit in deference to the

6   "deeply ingrained" general principle that "a corporation is not liable for the acts of its

7   subsidiaries." *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998).

8        HBML further contends that any contamination on the Property is the legal responsibility of

9   others, including Plaintiffs, who contributed to the contamination through their investigation of the

10  Property, Defendants Whitney and Swagelok, which either directly or indirectly engaged in

11  manufacturing operations on the Property from approximately 1963 to at least 1999, and/or Defendant

12  Lozick, who, on information and belief,  was the beneficiary of the CLL3 that was the owner of the

13  Property from approximately December 1988 until approximately 1999.[2]  To the extent Plaintiffs

14  allege that contamination from the Property migrated off-site, HBML denies that contamination on

15  other properties was caused, in whole or in part by HBML but was instead caused by the other parties

16  in this action and/or by other entities that operated on or near those properties.

17  **3.   Legal Issues**

18       The principal legal issues relate to identification of those entities legally responsible for

19  contamination of the Property under federal statutes, California statutes derived from and that largely

20  mirror those federal statutes, and California common law.  This includes liability under: (1) CERCLA,

21  see 42 U.S.C. sections 9601, et seq., which provides for liability of persons responsible for releases of

22  hazardous substances; (2) RCRA (as to Swagelok only), see 42 U.S.C. sections 6901, et seq., which

23  provides for liability of persons in connection with the handling, storage, treatment, transportation, or

24  disposal of solid or hazardous waste; (3) the Polanco Act, see Cal. Health & Safety Code sections

25  33459, et seq., which authorizes redevelopment agencies and their statutorily designated successor

26  _____

27  [2] Plaintiffs and the Cross-claimants claim that indirect subsidiary HSCM-20 and ultimately HM
    Holdings, Inc. "inherited Marchant's liability for contamination at the Property."  Plaintiffs and Cross-
    claimants also admit that HM Holdings "subsequently became Millennium Holdings, LLC," a separate

28  company.

1  agencies to take actions to remedy or remove releases of hazardous substances from property within

2  redevelopment areas; (4) the Gatto Act, see Cal. Health & Safety Code sections 25403, et seq., which

3  authorizes local agencies to take actions to remedy or remove releases of hazardous materials from

4  blighted property within a blighted area; and (5) common law theories of private and public nuisance

5  and trespass.  Defendants deny that they are responsible for any contamination of the Property or for

6  the offsite migration of any contamination to Site B or any other property and allege that, to the extent

7  any individual defendant is responsible for any contamination, any such harm is distinct, divisible, and

8  capable of reasonable apportionment.  Defendants also claim that the Plaintiffs' environmental agent

9  contributed to the alleged contamination through its activities and that, as such, the Plaintiffs are

10 responsible for the damage caused by its agent.

11      Other legal issues to be resolved likely will include various aspects of corporate law, including

12 in particular whether Swagelok and HBML are the alter ego(s) and/or successor(s) in interest to

13 Whitney and Marchant, respectively.

14      Finally, HBML anticipates that a legal issue that will need to be resolved will be its continuing

15 argument that this Court has no personal jurisdiction over it.

16 **4.      Motions**

17      HBML's motion to dismiss the Second Amended Complaint under Rule 12(b)(2) for lack of

18 personal jurisdiction was denied on January 30, 2019.  (ECF No. 143.)  HBML, Lozick, Swagelok and

19 Whitney anticipate that they may file motions for summary judgment pursuant to Rule 56, but it is too

20 early to make such determination.  The Parties do not anticipate any other motions at this time.

21 **5.      Amendment of Pleadings**

22      Plaintiffs have amended the operative complaint in this action on two occasions.  Plaintiffs'

23 Second Amended Complaint was filed on October 5, 2017.  (ECF No. 67.)  Swagelok, Lozick and

24 Whitney filed answers on October 6, 2017 (ECF Nos. 69-70, 72), and HBML filed its answer on

25 February 13, 2019 (ECF No. 144).  Based on information obtained from HBML during jurisdictional

26 discovery which concluded in mid-September 2018, Plaintiffs anticipate requesting leave of Court to

27 amend the Second Amended Complaint to name Tillotson Commercial Motors Limited, a British

28 corporation ("Tillotson"), and Hanson Limited, a British corporation ("Hanson Limited"), as

1  additional defendants.  Based on information and belief, Hanson Limited was created in year 2000,

2  and designated as HBML's parent company, with direct control over HBML and its financial

3  liabilities.  Moreover, evidence shows that Tillotson was a subsidiary of HBML, managing HBML's

4  business activities in the United States, and in particular the acquisition and liquidation of SCM,

5  through its business division called "Hanson Industries" in the United States.

6        HBML objects to adding either Tillotson or Hanson Limited as defendants in this case as they

7  are not proper defendants: among other issues, Plaintiffs have not served proper administrative notice

8  on either entity, Hanson Limited did not exist until 2003, years after the time period identified by the

9  other parties as relevant (and is not a corporate successor as to which jurisdiction is proper under the

10  standard in the Court's January 30, 2019 Order), this Court lacks personal jurisdiction over *either*

11  Tillotson  or Hanson Limited (the Court's recent decision with respect to HBML does not translate to

12  similar decisions for these separate corporate entities), and the other parties have unreasonably delayed

13  in raising these issues.  In fact, on December 4, 2018 (after the other parties were admittedly long

14  aware of the existence of these entities), all of the other parties stated in their Joint Case Management

15  Statement that they "do not presently anticipate the further addition of any parties . . . ."  Attempting to

16  add these two additional foreign entities almost three years after the filing of the initial complaint and

17  over eleven months after the latest point in time when the other parties admit that they learned of the

18  entities would necessitate additional 12(b)(2) motions, which would delay the entire schedule set forth

19  in the Discovery Plan jointly proffered by the parties.

20        Swagelok, Whitney and Lozick are currently unaware of any additional parties that may be

21  liable for the contamination of the Property. However, if discovery discloses that offsite contamination

22  from other sources has migrated to the Property and contributed to the contamination, these defendants

23  reserve the right to seek leave to add additional parties responsible for the contamination.

24  Additionally, to the extent that the Plaintiffs allege that contamination from the Property has migrated

25  to offsite locations, including Site B as the property is known, then these defendants will seek leave to

26  add the former owners and/or operators of Site B or other properties that Plaintiffs allege were

27  contaminated.

28

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP  070431\10643600
SAN FRANCISCO

- 6 -

Case No. 17-cv-00308-WHO
JOINT CASE MANAGEMENT STATEMENT

1        HBML is currently unaware of any additional parties that might properly be joined as parties in

2    this action but will promptly seek to add such parties if and when it learns of their identities or of their

3    ability to be sued.

4    **6.**    **Evidence Preservation**

5        The Parties have reviewed the ESI Guidelines and will meet and confer pursuant to Rule 26(f)

6    regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues

7    reasonably evident in this action.

8    **7.**    **Disclosures**

9        Plaintiffs, Swagelok, Lozick and Whitney timely complied with Rule 26 by providing their

10   initial disclosures on December 4, 2017.  HBML timely complied with Rule 26 by providing its initial

11   disclosures on March 1, 2019, after its motion to dismiss was denied.  The Parties recently met and

12   conferred to discuss the exchange of documents referenced in their initial disclosures.

13   **8.**    **Discovery**

14       For most of 2018, Plaintiffs, Swagelok, Lozick and Whitney pursued jurisdictional discovery

15   from HBML in support of their oppositions to HBML's motion to dismiss.  Pursuant to this Court's

16   Order, this discovery was limited to those jurisdictional issues raised in HBML's motion.  These

17   efforts were substantial and included multiple requests for production of documents, propounding of

18   interrogatories and requests for admission, several months spent meeting and conferring with HBML

19   (including a motion to compel filed by Swagelok), the review of almost 30,000 pages of documents

20   produced by HBML and depositions of multiple HBML witnesses on two continents.

21       In conjunction with these efforts, the Plaintiffs also directed third party subpoenas to Smith

22   Corona Corporation ("SCC") and Millennium Custodial Trust ("MCT").  While SCC's documents

23   were relatively limited, MCT provided an index identifying over 3,000 boxes containing potentially

24   relevant documents.  After substantial discussions with MCT, Plaintiffs, Swagelok, Lozick and

25   Whitney obtained an initial production of over 7,000 documents (spanning over 26,000 pages) from

26   MCT in mid-2018 and another production of over 28,000 documents (spanning over 67,000 pages) in

27   late 2018.  Finally, in early 2019, MCT produced almost 9,000 additional documents (spanning over

28   21,000 pages).

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP    070431\10643600
SAN FRANCISCO

- 7 -

Case No. 17-cv-00308-WHO
JOINT CASE MANAGEMENT STATEMENT

1    Pending this Court's ruling on HBML's motion to dismiss, Plaintiffs, Swagelok, Whitney and

2    Lozick also met and conferred on a number of occasions with respect to formal discovery vis-à-vis

3    themselves.  To that end, they initially filed a Joint Discovery Plan on December 4, 2017.  (ECF No.

4    84.)  Given the substantial amount of time that was involved in pursuing jurisdictional discovery from

5    HBML and related entities, however, they ultimately chose to defer these additional discovery efforts.

6    With the January 30, 2019 denial of HBML's motion to dismiss, all of the Parties have met and

7    conferred to prepare an Amended Joint Discovery Plan, filed concurrently herewith.  In that plan, the

8    Parties have laid out a general timeline for conducting discovery and proceeding to trial.

9    **9.**      **Class Actions**

10    This case is not a class action.

11    **10.**      **Related Cases**

12    There are no related cases or proceedings pending before another judge of this court or before

13    another court or administrative body.

14    **11.**      **Relief**

15    Plaintiffs seek an award of damages for the costs of cleanup work needed to meet applicable

16    state and federal standards, in addition to attorneys' fees and statutory interest.  Plaintiffs' estimated

17    costs of cleanup are in the range of $35 to $65 million, with $42 million listed on the Successor

18    Agency's most recent accounting of anticipated expenditures.  Plaintiffs also seek injunctive and

19    declaratory relief.

20    HBML, Swagelok, Lozick, and Whitney dispute any legal responsibility or liability for the

21    costs of cleanup and contend that Plaintiffs' damages are premature and speculative as a final remedy

22    has not been ordered by any authorized governmental agency.  HBML, Swagelok, Lozick, and

23    Whitney also believe the cleanup costs will be substantially less than Plaintiffs' estimate.  To the

24    extent that they may be found liable for any contamination, HBML, Swagelok, Lozick, and Whitney's

25    respective cross claims and counterclaims seek contribution with respect to any liability in excess of

26    their allocable and/or separate and divisible share of such cleanup costs.  Each of the counterclaims

27    also seeks both injunctive and declaratory relief.

28

**12.**   **Settlement and ADR**

    The Parties met and conferred regarding ADR pursuant to Civil L.R. 16-8 and ADR L.R. 3-5 and filed the required ADR certification documents.  Pursuant to those provisions, the Parties have agreed to participate in private mediation upon completion of fact and expert discovery and after filing of dispositive motions or upon agreement by the Parties.

**13.**   **Consent to Magistrate Judge for All Purposes**

    Plaintiffs have declined to have a United States magistrate judge conduct any further proceedings in this case.  (ECF No. 25.)

**14.**   **Other References**

    The Parties agree that this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation at this time.

**15.**   **Narrowing of Issues**

    The Parties are not presently aware of any issues that can be narrowed by agreement. The parties reserve the right to seek further narrowing of issues if such a need arises.

**16.**   **Expedited Trial Procedure**

    The Parties do not believe that this is the type of case that should be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A.

**17.**   **Scheduling**

    The Parties have met and conferred to discuss scheduling matters, including written discovery, depositions, expert witnesses, pretrial deadlines, and trial.  The Parties have proposed a general timeline in their Amended Joint Discovery Plan, which is being filed concurrently herewith.

**18.**   **Trial**

    This case will be tried to the Court.  As reflected in the Amended Joint Discovery Plan, the Parties currently estimate that the case will be ready for trial in October 2021.  The Parties estimate that trial will take approximately three to four weeks.

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP   070431\10643600
SAN FRANCISCO

- 9 -

Case No. 17-cv-00308-WHO
JOINT CASE MANAGEMENT STATEMENT

1  **19.    Disclosure of Non-party Interested Entities or Persons**

2      Because they are governmental entities, Plaintiffs are not required to file a Certificate of

3  Interested Entities or Persons pursuant to Civil L.R. 3-16.  Defendants have filed their respective

4  Certificates of Interested Entities or Persons pursuant to Civil L.R. 3-16 (ECF Nos. 83, 86, 87, 148).

5  **20.    Professional Conduct**

6      All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct

7  for the Northern District of California.

8  **21.    Other**

9      The Parties have not identified any other matters that may facilitate the just, speedy, and

10  inexpensive disposition of this matter at this time.

11

12  Dated:  July 30, 2019                          COX, CASTLE & NICHOLSON LLP

13                                                 By: /s/  Robert P. Doty
                                                   ─────────────────────────────
14                                                 Robert P. Doty[3]
                                                   Attorneys for Plaintiffs
                                                   THE SUCCESSOR AGENCY TO THE FORMER
15                                                 EMERYVILLE REDEVELOPMENT AGENCY
                                                   AND THE CITY OF EMERYVILLE

16

17  Dated:  July 30, 2019                          BAKER & HOSTETLER LLP

18                                                 By: /s/  Joelle A. Berle
                                                   ─────────────────────────────
19                                                 John Parker
                                                   Joelle A. Berle
20                                                 Attorneys for Defendants
                                                   SWAGELOK COMPANY and
21                                                 WHITNEY RESEARCH TOOL CO.

22  Dated:  July 30, 2019                          MANSOUR GAVIN

23                                                 By: /s/  Jeffrey M. Embleton
                                                   ─────────────────────────────
24                                                 Jeffrey M. Embleton
                                                   Samuel R. Martillotta
25                                                 Attorneys for Defendant
                                                   CATHERINE LENNON LOZICK

26

27

28  ─────────────────────
    [3] Concurrence in the filing of this document has been obtained from each of the other signatories.

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP  070431\10643600
SAN FRANCISCO

- 10 -

Case No. 17-cv-00308-WHO
JOINT CASE MANAGEMENT STATEMENT

1

2

3   Dated:  July 30, 2019                    WENDEL ROSEN BLACK & DEAN LLP

4                                             By: /s/ Christine K. Noma

5                                                 Christine K. Noma
                                                  Attorneys for Defendant
6                                                 CATHERINE LENNON LOZICK

7   Dated:  July 30, 2019                    K&L GATES LLP

8                                             By: /s/ Belynda S. Reck

9                                                 Belynda S. Reck
                                                  Kevin Asfour
10                                                Attorneys for Defendant
                                                  HANSON BUILDING MATERIALS LIMITED

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28